UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| **Jason Grayson,** | COMPLAINT |
| **Plaintiff,** | Civil Action No. 4:24-cv-01478-JD |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **Experian Information Solutions, Inc.,** | |
| **Defendant.** | |

## COMPLAINT

1. This is an action brought by the Plaintiff, Jason Grayson, for actual, statutory, and punitive damages, attorney's fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq,* (hereinafter "FCRA").

2. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3. The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

1

## JURISDICTION AND VENUE

4. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

5. Venue is proper in the Florence Division because the Plaintiff resides in Horry County and the Defendant transacted business in this division.

## PARTIES

6. The Plaintiff, Jason Grayson, is a resident and citizen of the State of South Carolina, Horry County, and is over the age of twenty-one (21) years.

7. Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation registered to do business in South Carolina with the South Carolina Secretary of State. Defendant Experian may be served with process through its registered agent for service of process, C T Corporation System, 2 Office Park Court Suite 103, Columbia, SC 29223. Defendant Experian was in all respects and at all times relevant herein doing business in the state of South Carolina.

8. Defendant Experian is a credit reporting agency as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a.

9. Defendant Experian's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires the Defendant to conduct a reasonable re-investigation of disputed information received from

the Plaintiff.

10. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's credit file, mixed the Plaintiff's credit file with that of another consumer, and/or completely removed Plaintiff's credit file, replacing his with another individual and reporting said other individual's credit as belonging to Plaintiff.

## FACTUAL ALLEGATIONS

11. In 2021, Plaintiff resided in Murrells Inlet, SC 29576.

12. While residing at 4586 Lomax Court, Plaintiff began receiving mail addressed to a "Jason Lawhon."

13. In March 2021, Plaintiff went to Kraft Credit Union to refinance an auto loan in order to reduce his car payments. At that time, the loan officer told him there was something going on with his credit reports, so Plaintiff did not qualify for the best rate available.

14. As Plaintiff does not have credit cards and did not need any other credit at the time, he did not look into his Experian credit report in 2021.

15. However, beginning in March 2022, Plaintiff and his wife were in the market to purchase a new home and actually found a home they wanted to purchase. Plaintiff applied for a mortgage through First Trust Mortgage which had an APR of 3.25%.

16. Unfortunately, Plaintiff was denied a mortgage because his Experian credit file was mixed with an individual named Jason Lawhon.

17.     Plaintiff immediately began disputing all of the incorrect information which was now appearing on his Experian credit report.  Plaintiff also called Defendant and the companies which were reporting the accounts on his credit report to dispute each account.

18.     Plaintiff's disputes included all of the incorrect names, which were variations of the name Jason Lawhon; an incorrect social security number; an incorrect date of birth; numerous incorrect addresses; incorrect telephone numbers; and incorrect employment information.

19.     In July 2022, Plaintiff again applied for a mortgage and was finally approved for a mortgage on the new home through Quicken Loans.  However, as a result of the delay caused by Plaintiff's mixed credit file, the APR had increased from 3.25% to 5.5%.

20.     Because Plaintiff was approved for the mortgage in July 2022, Plaintiff believed his mixed credit file had been corrected by Defendant.

21.     In April, 2023, Plaintiff wanted to purchase a different car.  He went online to check his Experian credit file and learned that his credit report was again mixed with Jason Lawhon.

22.     In April, 2023, Plaintiff disputed multiple incorrect names including Jason Lawhorn, Jason Maverick Lawhon, Jason M. Lawhon, and Jason Mave Lawhon.  Plaintiff also disputed an incorrect social security number, and incorrect date of birth, and incorrect employment information.

23.     On or about April 24, 2023, Defendant responded to Plaintiff's disputes stating that all of the disputed names had been updated to Jason Bernard Grayson.  Additionally,

Plaintiff's social security number was updated and the incorrect employment information was deleted.  Despite the removal of all of the incorrect names, two accounts that did not belong to Plaintiff continued to be reported on his Experian credit report. Specifically, National Recovery Agency, Account #35922697 and Wells Fargo Auto Account #517690. Defendant also continued to report hard inquiries from Credco and Advantage Credit Inc., which were not the Plaintiff's.  Finally, Defendant continued to report an incorrect year of birth, ten incorrect addresses which were clearly linked to Jason Lawhon, not Plaintiff, and three incorrect telephone numbers.

24.    On or about April 28, 2023, Plaintiff did another online dispute with Defendant disputing the National Recovery Agency, Account #359226XX as not his account.

25.    On May 1, 2023, Defendant forwarded it's Dispute Results to Plaintiff stating the National Recovery Agency account had been removed from Plaintiff's credit report.  These results also indicated that a date of birth and two telephone numbers were also deleted from the Plaintiff's credit report.  Attached to the Dispute Results was a copy of Plaintiff's credit file after Defendant's actions.  Unfortunately, Plaintiff's credit file continued to contain numerous incorrect addresses that did not belong to Plaintiff, an incorrect year of birth, and an incorrect telephone number that did not belong to Plaintiff.  Plaintiff's credit report also continued to include the Wells Fargo Auto account which did not belong to Plaintiff.

26.    In early May 2023, Plaintiff wanted to buy a used 2012 Audi A4 he had found at a car dealership in North Carolina.  Plaintiff applied for a loan to purchase the vehicle, but was denied because of his credit report.

27. On or about May 10, 2023, Plaintiff mailed a written dispute letter to Defendant via certified mail. In his letter, Plaintiff informed Defendant that he had received Defendant's dispute results, but his credit report was still reporting information that did not belong to him. Specifically, Plaintiff disputed the reporting of a National Recovery Agency, Account #35922697, a Wells Fargo Auto Account #51769025, and hard inquiries from Credco on September 1, 2022, and Advantage Credit, Inc., on January 20, 2022 as not his. Plaintiff also disputed the reporting of ten addresses at which he had never resided, and three phone numbers that were not his. Plaintiff also provided Defendant with his year of birth as 1974, not 1982 as reported by Defendant.

28. Defendant received Plaintiff's May 10, 2023, dispute letter on May 15, 2023.

29. On or about May 17, 2023, Plaintiff received a letter from Defendant stating it had received "a recent request regarding [his] credit information" that did not appear to have been sent directly by him and, as a precautionary measure, Defendant had not taken any action on his alleged request. Plaintiff was told to call Defendant if he believed his credit report contained inaccurate or incomplete information. Thereafter Plaintiff called the Defendant at the number provided.

30. On or about May 19, 2023, Plaintiff received the results of Defendant's alleged investigation into his dispute. Defendant's Dispute Results did not specify what action, if any, had been taken by Defendant. Rather, the Dispute Results simply referred Plaintiff to his credit report for updates. Upon review of the attached credit report, Plaintiff discovered that the Wells Fargo Auto Account was still reporting as belonging to Plaintiff.

Additionally, the incorrect year of birth, 1982, was still reporting, as were all of the incorrect addresses and phone number. Finally, the two disputed hard inquiries also remained. Clearly, Defendant had done no investigation whatsoever into Plaintiff's May 10, 2023, disputes.

31.   On or about May 24, 2023, Plaintiff filed an online dispute with Experian again disputing the Wells Fargo Dealer Svcs Account #517690XXXXXX as not his. That same day, Plaintiff also disputed the incorrect addresses and telephone number still reporting on his credit report.

32.   That same day, Plaintiff received Defendant's Dispute Results online wherein Defendant informed Plaintiff that four of the incorrect addresses were deleted, as was a disputed telephone number. However, Plaintiff's full credit report showed that Defendant continued to incorrectly report Plaintiff's year of birth as 1982. Defendant also continued to incorrectly report six addresses at which Plaintiff never lived, and which he had already disputed, as belonging to him. Defendant also continued to report the disputed Wells Fargo Auto Account as belonging to Plaintiff but "Under Dispute." Finally, Defendant also continued to report the two disputed hard inquiries.

33.   On or about May 25, 2023, Plaintiff received Defendant's alleged investigation into his disputes via U.S. mail. In this Dispute Results, Defendant informed Plaintiff that the disputed Wells Fargo Auto account had been deleted from Plaintiff's credit report. However, Defendant continued to report an incorrect year of birth for Plaintiff, incorrect addresses at which Plaintiff had never lived, and two hard inquiries which Plaintiff stated

he had never authorized.

34. Following the removal of the Wells Fargo Account, Plaintiff's Experian FICO credit score was 729.

35. On or about May 31, 2023, Plaintiff mailed a second dispute letter to Experian by way of certified mail. In this letter, Plaintiff again specifically disputed the Credco hard inquiry on September 1, 2022, and the Advantage Credit, Inc., hard inquiry on January 20, 2022, as not his. Plaintiff also disputed the continued reporting of ten addresses where he never resided. Finally, Plaintiff again informed Defendant that his correct year of birth was 1974, not 1982. Defendant received Plaintiff's letter on June 5, 2023.

36. On or about June 7, 2023, Defendant notified Plaintiff electronically that three of the disputed addresses had been deleted from his credit report. Defendant also notified Plaintiff that the disputed address of 100 Sammons Drive, Chickamauga, GA was updated to 196 Southbury Dr, Myrtle Beach SC. Unfortunately, despite Plaintiff's numerous disputes, both online and in writing, Defendant failed to correct Plaintiff's year of birth to 1974 and also failed to delete the unauthorized hard inquiries.

37. On or about June 13, 2023, Plaintiff received a letter from Defendant informing Plaintiff that address information is obtained from credit grantors and/or vendors who gather address information from public records. As a result, Defendant informed Plaintiff that he would need to send in a copy of a valid identity theft report in order for the incorrect addresses to be removed. Plaintiff was not the victim of identity theft, but rather was the victim of Defendant's mixing of Plaintiff's credit file with Jason Lawhon.

38.     On or about June 13, 2023, Plaintiff received a second letter from Defendant via mail which provided Plaintiff the results of Defendant's alleged investigation into his disputes.  Again, Defendant informed Plaintiff that he needed to provide an identity theft report in order to prevent the incorrect addresses from reappearing on his credit report. Thereafter, the results indicated that Defendant had finally deleted the two disputed hard inquiries from Plaintiff's credit report.  The dispute results did not mention Plaintiff's dispute regarding his year of birth.  However, a review of Plaintiff's full credit report showed that Defendant was continuing to report an incorrect year of birth for Plaintiff.

39.     After reviewing his June 13, 2023, Plaintiff again did an online dispute of his year of birth and several telephone numbers that did not belong to him.

40.     On or about June 19, 2023, Plaintiff received an electronic notification that Defendant had deleted two incorrect phone numbers from his credit file.  However, the incorrect year of birth remained.

41.     On June 20, 2023, following the deletion of the two incorrect hard inquiries, Plaintiff's Experian FICO credit score increased from 729 to 735.

42.     On or about August 18, 2023, Plaintiff mailed a third dispute letter to Defendant. In this letter, Plaintiff informed Defendant that his Experian credit report was still reporting an incorrect year of birth.  Plaintiff included a copy of his driver's license to verify his date of birth.  Plaintiff also informed Defendant he could not provide an identity theft report, as he did not have any information that he had actually been the victim of identity theft. Rather, Plaintiff's credit file had been mixed by Defendant.

43. Defendant received Plaintiff's third dispute letter on August 23, 2023.

44. On or about August 24, 2023, Plaintiff received the results of Defendant's alleged investigation into his dispute wherein Defendant stated the disputed date of birth was not currently displaying on Plaintiff's credit report. A review of Plaintiff's full credit report showed that, instead of reporting Plaintiff's correct year of birth, Defendant had simply chosen to not report any year of birth on Plaintiff's credit report.

45. To date, Defendant continues to intentionally exclude Plaintiff's correct year of birth from his Experian credit report.

## COUNT ONE
## FCRA - 15 U.S.C. §1681n

46. The Plaintiff adopts the averments and allegations of paragraphs 11 through 45 hereinbefore as if fully set forth herein.

47. Defendant maintains and distributes credit data files on the Plaintiff's credit.

48. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) providing Plaintiff's credit file to companies without determining that these companies had a permissible purpose to obtain Plaintiff's credit file pursuant to 15 U.S.C. §1681b.

49. The Plaintiff further alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

50.     Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, the Plaintiff is entitled to statutory damages.

51.     As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, increased costs of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation.  Plaintiff is entitled to actual damages in an amount to be determined by the jury.

52.     In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

53.     Plaintiff is entitled to attorneys' fees, pursuant to 15 U.S.C. §1681o(a)(2).

54.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

<b><u>COUNT TWO<br>FCRA 15 U.S.C. §1681o</u></b>

55.     The Plaintiff adopts the averments and allegations of paragraphs 11 through 54 hereinbefore as if fully set forth herein.

56.     Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the

reinvestigation requirements in 15 U.S.C. §1681i; and (c) providing Plaintiff's credit file to companies without determining that these companies had a permissible purpose to obtain Plaintiff's credit file pursuant to 15 U.S.C. §1681b.

57. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

58. As a result of Defendant's violations of the FCRA, the Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, increased costs of credit, lost opportunities to receive credit, damage to reputation, worry, anxiety, physical sickness, physical pain, headaches, loss of sleep, distress, frustration, embarrassment, and humiliation. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

59. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

60. Plaintiff is entitled to attorney fees, pursuant to 15 U.S.C. §1681o(a).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendant for the following:

A. Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B. Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C. Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C.

§1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

    D.    For such other and further relief as the Court may deem just and proper.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed ID #10323
**HAYS CAULEY, P.C.**
1303 West Evans Street
Florence, SC 29501
(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Experian Information Solutions, Inc.
c/o – C T Corporation System - Registered Agent
2 Office Park Court, Suite 103
Columbia, SC 29223